WETZEL et al. v. MINNESOTA TRANSFER RY. CO. et al.

(Circuit Court, D. Minnesota, Third Division. August 24, 1893.)

EQUITY—LACHES—UNAUTHORIZED ASSIGNMENT OF MILITARY LAND WARRANT.
A soldier's widow received from the United States a land warrant, as provided by Act Feb. 11, 1847, § 9, (9 Stat. 125,) and was thereafter duly appointed guardian of her minor children, except one daughter, who was a married woman; and in that capacity and for herself, she attempted to assign such land warrant, being joined therein by the said married daughter, but she did not obtain any order of court, authorizing such assignment as was by law required. The consideration of the assignment was $100, to which sum she was entitled, by the terms of the act, instead of the warrant. The assignee located the warrant, duly obtained a patent, and the warrant was duly filed in Washington. The land increased in value to $1,000,000, and improvements were placed thereon to the value of $2,000,000, and more than 40 years elapsed from the date of the assignment. *Held,* that a court of equity would not entertain a suit by the assignor and her descendants to set aside the assignment as invalid, and to recover possession of the property, but should quiet respondents' title against such descendants. Felix v. Patrick, 12 Sup. Ct. Rep. 862, 145 U. S. 317, followed.

In Equity. Bill by Elizabeth Wetzel, Harriet A. Van Zant, Emma F. Hergesheimer, Maggie L. Beckman, John Wesley Remsen, George W. Remsen, Mary J. Remsen, Clara B. Remsen, and Mabel Remsen against the Minnesota Transfer Railway Company and others to recover possession of certain lands, and to have certain muniments of respondents' title declared void. Decree for respondents.

W. C. Mayne, Clapp, Bramhall & Taylor, and Lusk, Bunn & Hadley, for complainants.

Davis, Kellogg & Severance and C. H. Benedict, for defendants.

WILLIAMS, District Judge. This action concerns 160 acres of land, described in the complaint, situated in the corporate limits of the city of St. Paul, between that city and Minneapolis. Elizabeth Wetzel is alleged to be the widow of George W. Remsen, and the other complainants are their surviving children and grandchildren.

The bill states that George W. Remsen became, in his lifetime, entitled to a land warrant, as a soldier in the United States army, under the act of congress approved February 11, 1847. The United States duly issued a land warrant for 160 acres of land, in the name of Elizabeth Remsen, widow, Harriet A. Remsen, Mary Ann Remsen, John Wesley Remsen, Elizabeth Remsen, and George W. Remsen, children and heirs at law of the said George, which warrant entitled them, under section 9 of said act, to locate it on any quarter section of government land subject to private entry. That, when the warrant was issued and assigned, all the complainants but Elizabeth Remsen were under 14 years of age, except Harriet A., who was 17. That on or about October 6, 1848, the widow was duly appointed the guardian of the persons and estates of all the children except Harriet A., by the orphans' court of the city

of Philadelphia. That on October 11, 1848, at Philadelphia, in the state of Pennsylvania, she, purporting to act for herself, and as guardian for said minors, joined with said Harriet A., and together they attempted to assign said land warrant by the instrument following, delivered and executed on that day to one Nathan C. D. Taylor:

"For value received, we, Elizabeth Remsen, widow, for myself, and as guardian of the persons and estates of Mary Ann Remsen, John Wesley Remsen, Elizabeth Remsen, and George W. A. Remsen, minor children of the George W. Remsen, deceased, duly appointed by the orphans' court of the city and county of Philadelphia, and Harriet A. Remsen, do hereby sell and assign unto Nathan C. D. Taylor all our right and title, and all the right and title of the minor children, to the within certificate or warrant No. 28,811, for one hundred and sixty acres. Witness my hand this 11th day of October, 1848, at Philadelphia, in the state of Pennsylvania.

her<br>
"Elizabeth X Remsen,<br>
mark.

"For Myself, and as Guardian of the Minor Children of George W. Remsen, Deceased.

"Harriet A. Remsen.

"Attest:
  "Isaac Boileau.
  "Wm. F. Small.

"Acknowledged before me this 11th day of October, 1848, at Philadelphia, in the state of Pennsylvania.     Isaac Boileau,
"Alderman and Justice of the Peace."

This sale and assignment the bill charges to be void, because such court never made any order authorizing the guardian to assign the interests of the minors in the warrant, and also by the laws of the United States, to wit, the act of 1847, such guardian had no authority, without order of said orphans' court, to assign said estate of said minors.

The bill also alleges that the widow, Elizabeth, by the law of Pennsylvania, had only a common-law dower interest in said real estate, which could not be sold or assigned before admeasurement. That Harriet was a minor, and was at the time the wife of one Jacob Heyer, and that by the law of Pennsylvania her conveyance was void, without her husband's signature. That she did not know what the instrument was, or that she had any interest in the warrant, or that her father had ever been entitled to the warrant, but that she signed in such ignorance at the request of her mother, who represented that the signature was to a receipt, and of a formal character. That she never received any consideration, and remained, until within eight months prior to the filing of the bill, in total ignorance as to the matter stated therein. That Taylor, as assignee, located the warrant upon the southwest quarter of section 28, in township 29 N., of range 23 W., Minnesota, upon lands now situated in the county of Ramsey, on or about the 20th of March, 1850, and that thereafter he received a patent from the United States, bearing that date, of which the following is a copy:

"The United States of America, to All Whom These Presents shall Come, Greeting: Know ye, that in pursuance of an act of congress entitled 'An act

to raise for a limited time an additional military force, and for other purposes,' approved February 11th, 1847, Elizabeth Remsen, widow, Harriet A. Remsen, Mary Ann Remsen, John W. Remsen, Elizabeth Remsen, and George W. A. Remsen, children, heirs at law of George W. Remsen, deceased, late a private of Company H, third regiment, United States infantry, having deposited in the general land office a warrant in their favor, numbered 28,811, there is therefore granted by the United States unto Nathan C. D. Taylor, assignee of said Elizabeth Remsen, in her own right, and as guardian of the aforesaid minor heirs, and to his heirs, the southwest quarter of section twenty-eight, in township twenty-nine north, of range twenty-three west, in the district of lands subject to sale at Stillwater, territory of Minnesota, containing one hundred and sixty acres," etc.

That said patent is recorded in the office of the register of deeds of Ramsey county, Minn. That Taylor afterwards executed divers conveyances of the land, by and under the patent passed to the numerous defendants named.

That said Mary Ann Remsen was born on August 12, 1835, and died June 12, 1882, leaving surviving her children and sole heirs at law, Emma F. Hergesheimer and Maggie L. Beckman. John Wesley Remsen is one of the before-mentioned minor children of said George W., and was born on the 8th day of November, 1837. The said Elizabeth W. Remsen was born on the 22d day of February, 1840, and died on the 11th day of October, 1862, unmarried and without issue, and her interest then descended to complainants, as provided by the statutes of Minnesota. Said George W. A. Remsen was born on the 18th day of September, 1842, and died in 1878, leaving Mary J. Remsen, his widow, George W. Remsen, Clara B. Remsen, and Mabel Remsen, his children; said widow and children being his sole heirs at law.

Stipulation: In December, 1889, Mr. William C. Mayne, one of the counsel for the complainants, knew that the land warrant in question had been issued to the widow and heirs of George W. Remsen, deceased, and knew of the assignment set up in the complaint, and that said land warrant had been located upon the S. W. ¼ of section 28, township 29 N., of range 23 W., Stillwater land office, Minnesota, and a patent issued therefor to Nathan C. D. Taylor, and that he inspected in said December, 1889, the land warrant, assignment, appointment of guardian, (being complainants' Exhibit No. 4, herein,) and the patent, which papers were at the land office in Washington. That during the months of December, 1889, and January and February, 1890, the said Mayne communicated to all of the complainants, except the heirs of George W. A. Remsen, deceased, the fact that a Mexican land warrant had been issued to the widow and heirs of George W. Remsen, deceased, for services in the Mexican war, and that there was a question as to the validity of the sale and assignment thereof, and a chance to claim the land located thereunder, without disclosing to them the location of the land located under said warrant. That the question of the giving of a power of attorney by the heirs to another party than himself, for the purpose of bringing suit and making settlements for their interests in said lands, was discussed. The parties with whom said Mayne had the discussion

declined at that time to execute such power of attorney or any power of attorney, until they were informed of the location of the land under such warrant, and its value. This Mr. Mayne declined to give, because the parties for whom he was acting, and who had discovered this alleged defect in the title, had instructed him not to do so. That said negotiations continued until about May, 1890, when they were broken off without his having disclosed to them, or any of the said heirs, the location of said land, or its value. That thereafter he did not act for or represent said western parties, but did make a personal investigation for the purpose of ascertaining the exact location of this land, and the parties in possession under such warrant, and that on August 18, 1891, he caused the complainants to meet at his office, when he communicated to them, for the first time, the exact location of this land, to wit, that it was in the city of St. Paul, in the state of Minnesota, and fully discussed with them the matters stated in the bill, and that he thereafter acted as their attorney, and, with their consent, employed to assist him in the prosecution of their claims as to said land the counselors and solicitors named in the bill herein, and that previous to the said August 18, 1891, said Mayne had not acted as attorney or agent of said plaintiffs, or any of them, in respect to any of the matters in controversy in this suit. That William C. Mayne, one of the solicitors for the complainants herein resides in the city of Philadelphia, Pa. That said Mayne visited St. Paul on September 17, 1891, for the purpose of obtaining the opinion of local counsel in St. Paul as to the validity of the claim of the complainants herein, and, if such opinion should be favorable to the validity of their said claim, to employ local counsel in said St. Paul to act for said complainants, and with him, in the preparation and presentation of their said claim to the court. That with that object in view he consulted Clapp, Bramhall & Taylor, attorneys residing in said St. Paul, and solicitors for the complainants herein, particularly Mr. Bramhall, of said firm. That an abstract of the property in question in this suit, containing 983 entries, was made by the official abstract clerk of the county of Ramsey, Minn., the making of which took considerable time. That said Bramhall undertook to and did examine said abstract, and the facts and validity of plaintiffs' claim, and the legal questions involved therein, as expeditiously as he was able, in a thorough manner, to do, in connection with his other legal business. That during all of the times herein mentioned his partner, Mr. Clapp, of said Clapp, Bramhall & Taylor, was attorney general of the state of Minnesota, and as such fully occupied, and had no time to, and did not, devote any time to any of the legal business of the said firm of Clapp, Bramhall & Taylor. That Mr. Taylor, the other member of said firm, was a young man just admitted to practice law, from the law school, and without experience at the bar. That said Bramhall concluded his said examination the latter part of December, 1891, when said Mayne again visited St. Paul, to wit, on December 30, 1891, for the pur-

pose of obtaining the report of said Bramhall upon said matters, and making arrangements with his firm to act for the complainants in this matter, and during said visit said Mayne did receive such report, and make such arrangements. That, upon the advice and recommendation of said Bramhall that a suit of this character should not be brought unless other local counsel also were of the opinion that the complainants had a good claim, Lusk, Bunn & Hadley, also attorneys in said St. Paul, and solicitors for complainants, were consulted in January, 1892. That they took the matter under advisement for about 30 days for the purpose of making a personal examination of the legal questions involved, and did the same as quickly as possible, in connection with their other legal work. That at the end of that time said Lusk, Bunn & Hadley consented to act as solicitors for complainants. That as soon as they consented to do so said Bramhall caused maps of the premises to be made, and the abstracts of the property in question to be continued, and examined the title to each piece, parcel, and lot constituting a portion of the premises in question, and caused a search to be made in the offices of the clerk of the district court of said Ramsey county, and the circuit court of the United States for this district, for judgment liens against the owners of any of said property, for the purpose of ascertaining the proper and necessary parties defendant in this cause. That there were 1,133 entries in the abstract of title to this property, and 95 entries as to judgments, to be examined, and which he did examine. That when he had completed this examination, and ascertained the claims of said parties, he went all over it again for the purpose of verifying and correcting the same. That all of this involved an immense amount of hard and laborious work, which necessarily consumed a very large amount of time. That he did everything set forth herein as quickly and as expeditiously as he could, in connection with his other legal engagements and labors. That, at the same time said Bramhall was making this examination as to parties, Bunn, of said Lusk, Bunn & Hadley, was preparing the bill herein, and as soon as said Bramhall had completed said examination said bill was completed, and sent to Mayne, at said Philadelphia, for examination, and was promptly returned by said Mayne, and, as soon as returned, put in the hands of the printer, and it and the subpoenas herein were printed as quickly as possible, and the bill herein filed on May 28, 1892. That said bill and subpoenas were specially printed, by reason of the large number of defendants herein, and to meet the supposed demand for the same. That between August 15, 1891, and the time of the filing of the bill herein, there were, as evidenced by said official abstract, 17 deeds given, affecting 18 lots in Midway Heights, and 3 lots in Lovering's factory, warehouse, and transfer property, and 13 mortgages, affecting 11 lots in Midway Heights, and 20 lots in Lovering's factory, warehouse, and transfer property, all of which constituted a portion of the property in question.

Upon this statement of facts, several propositions of law have been

submitted by counsel on either side; but, with my view of the case, it is utterly unnecessary, and would be productive of no good result, to notice any of them, save the one governing principle that applies to this case.

It is clear to my mind that the important question is the question of laches. This case comes so clearly within the doctrine announced by the supreme court of the United States in the case of Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. Rep. 862, that it is unnecessary, in the decision of this case, to pass upon any of the other questions raised by counsel on either side. In that case, Sophia Felix was an Indian of the Sioux tribe, residing upon their reservation, and, owing to her tribal relations, was for a long time unable to sue in the courts of the United States. She was the owner of certain land scrip, which the defendant Patrick obtained from her under circumstances, as stated in the complaint, that amounted to an absolute fraud upon her rights, and were but little removed from larceny of the scrip. The scrip was located upon the lands described in the suit, and after the lapse of 28 years, and after her tribal relations had been severed, and the rights of herself and her heirs to maintain an action in the courts of the United States had accrued, suit was brought for the lands. The property, in the mean time, had increased in value greatly, so that its value at the time of bringing suit was over a million dollars. The court, in that case, uses the following language:

"But conceding that the plaintiffs were incapable, so long as they maintained their tribal relations, of being affected with laches, and that those relations were not dissolved until 1887, when they were first apprised of their rights to this land, it does not necessarily follow that they are entitled to the relief demanded by this bill. The real question is whether equity demands that a party who twenty-eight years ago was unlawfully deprived of a certificate or muniment of title of the value of $150 should now be put in possession of property admitted to be worth over a million. The disproportion is so great that the conscience is startled, and inquiry is at once suggested whether it be possible that the defendant has been guilty of fraud so gross as to involve consequences so disastrous. In a court of equity, at least, the punishment should not be disproportionate to the offense, and the magnitude of the consequences in this case demands of us that we should consider carefully the nature of the wrong done by the defendant in acquiring the title to these lands."

The case at bar is a much stronger one than that of Felix against Patrick. In that case the scrip, as has been stated, was obtained from the Indian woman by false representations and actual fraud. In the case at bar the land warrant was purchased from the widow of the deceased soldier, Remsen, both in her individual capacity, and as guardian for her children and the children of the deceased soldier, and the full value thereof was paid to her in money. The land warrant was located upon lands in the then territory of Minnesota, and was accepted by the officers of the land department of the United States, together with the assignment upon it, as being in all respects sufficient in law. The indorsement upon it by the land officers was a description of the land upon which the scrip had been laid. The warrant was then forwarded to the proper department in Washington, and there it has lain ever since, with the indorse-

ment upon it, from which the plaintiffs could at any time, by a simple inquiry, have ascertained upon what lands the warrant was laid, and thus have been enabled to institute this action within a reasonable time, if they thought they had any rights in the matter. Instead of doing that, however, they have allowed their rights, if they had any, and their claims, to remain dormant for nearly half a century, until the lands that they now seek to obtain by this action are of the value of $1,000,000, and the improvements upon them of the value of $2,000,000; until a large portion of the original quarter section has been platted into blocks and lots, upon which nearly 300 people have purchased lots, and erected homes.    Upon a portion of the land, iron rails have been laid, and a complicated system, for the purposes of railway transfer, has been arranged thereon, over which is handled and carried much of the traffic of two continents; and to say now that, under these circumstances, these plaintiffs are entitled to the remedy sought by this bill, would, in my judgment, be the monumental wrong of this age.    Courts of equity are generally asked to right some wrong, or to grant some relief, which cannot be obtained in a court of law; but in this case the plaintiffs, originally, had no wrong to complain of.    They received the full value for the land warrant granted by the government to their ancestor for his services in the war in Mexico.    This is not only shown by the proof in the case, but is conceded by the learned counsel for the complainants, for these land warrants were valued by the government at the sum of $100, and any one entitled to a land warrant might receive that sum in lieu thereof.    Here we find that Mrs. Remsen received for herself, and as guardian of her children, the full sum of $100, and the purchaser of the land warrant paid all fees necessary to effect its transfer to him; so that plaintiffs have no standing, upon the equities of the case, in this court.    They were not defrauded in any manner, as was the Indian in the case of Felix against Patrick, and I can conceive of no reason why they should be entitled to invoke the aid of a court of chancery in this matter.

Let a decree be entered in this case for the defendants upon the original bill, and let the complainants take nothing by their suit; and, further, let the title of the defendants be forever quieted in and to the lands described in the complaint.