W. P. HOLMAN v. HARM H. WINTERBOER, *et al.*, Appellants.

**Quieting Title:** FICTITIOUS GRANTEE: *Laches.* Plaintiff, claiming title to land under a deed from H., alleged that M., the common source of the title, made a deed to D. under the assumed name of S., that S. deeded to plaintiff and that a deed from S. relied on by defendants was a forgery. *Held,* that where plaintiff and H. had paid no attention to the land for twenty-three years, until just before the commencement of this suit, during which time defendants and their grantors paid taxes, made valuable improvements, and spent large sums in acquiring their title, plaintiff's claim, in view of his unexplained laches, supported only by the testimony of H., could not be maintained.

*Appeal from Clay District Court.*—HON. LOT THOMAS, Judge.

MONDAY, JANUARY 23, 1899.

ACTION to quiet title. The land was patented by the United States to William Smythe, November 10, 1859, and by him conveyed to Mary R. Holman, September 29, 1862. She executed a quitclaim deed to Frank L. Smith, December 11, 1863. The plaintiff received a warranty deed from his father, Loren Smith Holman, April 28, 1893, and on this chain of title, bases his prayer for relief, alleging that said Loren Smith Holman took title under the assumed name of Frank L. Smith, and never parted with it except to plaintiff. The defendants claim title under a deed purporting to have been executed by Frank L. Smith, January 13, 1871, to Sidney J. Smith. The latter conveyed to John Strayer, July 24, 1872, who deeded the northwest one-fourth of section 10 and the southeast one-fourth of northeast one-fourth of section 9, in township 97, range 38, to Joseph Todd, who afterwards sold it to Eliza Bradish, and she to Harm H. Winterboer, March 10, 1890. The executors of said Strayer conveyed the northeast one-

fourth of section 10 to R. J. Jones, September 20, 1890. This one-fourth was sold in 1892 for the taxes of 1891, and the tax deed executed to M. E. Griffin, March 13, 1896. The issues raised in the pleadings are: (1) Whether the conveyance by Mary R. Holman of December 11, 1863, was to a person named Frank L. Smith, or to Loren Smith Holman, under that assumed name; (2) whether the deed purporting to have been executed by Frank L. Smith, January 13, 1871, was a forgery; (3) whether the plaintiff is barred by laches from recovery; and (4) whether the tax deed to Griffin is invalid, because of a combination of bidders at the sale in 1892.—*Reversed.*

*Carr & Parker* and *Richardson, Buck & Kirkpatrick* for appellants.

*Cory & Bemis* for appellee.

LADD, J.—This land was acquired through an exchange of property belonging to Loren Smith Holman in 1859, but, losing the deed then made, that of September 29, 1862, was executed in its stead. He may have taken the first in his wife's name, as he says, to shield his family from possible business misfortunes; and, that being true, the one replacing it necessarily conveyed to the same person. This may well account for the deed to his wife after their separation, in 1861. They agree that the deed to Frank L. Smith, of December 11, 1863, under which all parties claim, was executed at his request, and, presumably, in adjustment of their property rights, as she received fifty dollars for so doing. She claims he wrote her that he was the Frank L. Smith, and he took the title in that assumed name in order to protect it from her father, who (as he had great influence over his daughter, and had already defrauded him of one hundred and twenty acres of land), he feared, would conspire to cheat him. This explanation is questionable, as, even if protection might be thus had, the information imparted

made knowledge of the design accessible, and rendered it of no avail. In February, 1893, she wrote to Barnard: "It is true I signed the deed of quitclaim to Mr. Holman, although I have no distinct remembrance of so doing, in regard to the land. * * * Mr. Holman, who is still living, says he still owns the land; but I think, as I told you before, he only gave part of his name, which was Loren Smith Holman. I think from what he says it is the Frank L. Smith." Her testimony is identical with his, even to the expressions used. The idea of an assumed name seems to have been an afterthought with her. From their situation, she could only have known of the personality of Frank L. Smith from his letters; and necessarily knowledge of whether the deed was to such an individual, or to Holman, under that assumed name, could have been derived from her then husband alone. As they had separated, a conveyance to him would not devest her inchoate interest. Besides, the usual method of transferring real estate between husband and wife was formerly not direct, but through a third person. That he retained an interest in the land is evinced by the payment of taxes up to 1869. None were paid by him after that year, though he insists that he did so through a lawyer at Rutland, Vermont, since deceased. But the record shows them to have been paid by others, and his story is not confirmed in any way. It will be observed that he ceased such payment at about the time of the deed of Frank L. Smith to Sidney J. Smith, January 13, 1871; those payable in 1870 only being omitted. And it may be added that the deed of Smythe to Mrs. Holman was not recorded till December 27, 1871. None of the title deeds remain in his possession, not even that from his wife to Frank L. Smith. From 1869 to 1888 he paid no taxes, and gave the land not the slightest attention. In 1888 the plaintiff claims to have contracted for it—though the deed was not executed till 1893,—and that he did not pay the taxes because paid by some one else. He, in turn, gave the land no attention until

shortly before the beginning of this action. In other words, for more than twenty-three years, since the deed from Frank L. Smith, under which the defendants claim title, Loren Smith Holman and his grantee did not give the slightest intimation, by word or act, that either had any interest in the land in controversy, and then, for the first time, alleged that Frank L. Smith was but the assumed name of Holman, and the deed a forgery. As we have seen, that fact, if it be such, must rest entirely on the evidence of Holman; and the question arises whether his unsupported testimony can be accepted in the light of the circumstances to which attention has been called. It matters little whether he took the deed, or Smith was a real person. He has never gone by that name, and, if there was such a person, he doubtless executed the conveyance at Holman's direction. If he acquired the title under an assumed name, then he must have used it in making that deed, as he did afterwards in the first conveyance to his son. True, he was in Vermont during the winter of 1870 and 1871, but this did not preclude him from making a trip to Chicago, and executing that conveyance. The notary, Mayo, was not well acquainted with the grantor, and the evidence with reference to Holman's residence at Salisbury, Vermont, is not necessarily inconsistent with his presence in Chicago January 13, 1871. Every circumstance shown is entirely consistent with the finding that Holman parted with the title in 1871, and inconsistent with the conclusion that he retained it. He ceased the payment of taxes, and, though the land increased in value, and became capable of producing an income, he gave it no attention. In 1875 he passed through Iowa in going from Vermont to Kansas, and did not go to see it. Others, relying on the apparent title, have expended money in acquiring it, have paid all the taxes since 1871, leased the land for herding in 1886 and the following year, and in 1890 put two hundred acres under cultivation, and fenced the remainder, besides constructing valuable improvements. No one knows the

whereabouts of Frank L. or Sidney J. Smith, and Strayer is dead. The title deeds are lost. We think these circumstances overcome the positive testimony of Loren Smith Holman, and that the plaintiff has failed to show the deed from Smith, under which the defendants claim, made by one not authorized to execute it.

That one may acquire title under an assumed name may be conceded. See 3 Washburn, Real Property (4th Ed.), section 26 *et seq.; Thomas v. Wyatt,* 31 Mo. 188; *David v. Insurance Co.,* 83 N. Y. 267; *Wilson v White,* 84 Cal. 239 (24 Pac. Rep. 114). In such a case extrinsic evidence may be received to show who, in fact, was intended. This does not change the instrument, but ascertains and fixes the application of the terms used therein. This may be necessary, for, although the true name and location of the grantee be given, sometimes persons of the same name reside in the same community. *Morse v. Carpenter,* 19 Vt. 613; 1 Devlin Deeds, section 193. *"Id certum est quod certum reddi protest."* On the other hand, a conveyance to a fictitious person passes no title. *Thomas v. Wyatt,* 25 Mo. 24; *Muskingum Turnpike Co. v. Ward,* 13 Ohio, 120. But the strictest proof must be made where a claim of this kind is set up, and, unless clearly and fully established, it ought not to avail. The very fact of doing any business under an assumed name is a matter which naturally excites suspicion. The purpose is ordinarily to deceive, and those engaging in such transactions are not in a position to complain if courts are not inclined to extend to them full credit. They cannot stand by and allow others to bear the burden of taxation for more than twenty years, expend large sums of money in acquiring title under one of name like that alleged to have been assumed, make valuable improvements, and, after the land has increased in value tenfold, obtain the property, on the bare assertion, under oath, that such name was assumed, and title not conveyed, without satisfactorily accounting for their laches and explaining their silence. —REVERSED.