164    85
168    74
168    75

164    85
f169   549
169    554
f170   314

## RYASON *v.* DUNTEN ET AL.

[No. 20,439.  Filed January 6, 1905.]

1. TENANCY IN COMMON.—*One Cotenant Purchasing Outstanding Title.—Resulting Trust.*—Where one cotenant, holding under the same title as his cotenants, buys an outstanding title, a trust relation thereby arises in equity in favor of such cotenants, without regard to any question of fraud or over-reaching.  p. 90.

2. SAME.—*One Cotenant Purchasing Outstanding Title.—Merger.*—Where one cotenant purchases an outstanding title, such title does not merge in the common estate nor vest in his cotenants, but such cotenant holds same as a means of securing the payment of the cotenants' proportionate share.  p. 90.

3. SAME.—*Right of One Cotenant to Share in Title Purchased by Another Cotenant.*—Upon paying their proportionate shares within a reasonable time, cotenants may obtain proportionate shares in any outstanding title bought by one cotenant, but by express refusal so to pay or by conduct implying such refusal, such cotenants may elect not to share in such purchased title.  p. 91.

4. SAME.—*Purchase of Title by One Cotenant.—Redemption.*—Where one cotenant purchases the common property at a foreclosure sale, and there is no redemption from such sale within the statutory period, the legal title to such property passes to such purchasing cotenant, and the right of the cotenants to redeem thereafter is purely equitable, and an offer to pay the necessary redemption money is a condition precedent to an action in equity for redemption.  p. 92.

5. SAME.—*Rents and Profits.*—Where one cotenant occupies the land and collects no rent from a third party, and does not deny his cotenants' right or title, he can not be compelled to account for the rents and profits.  p. 93.

6. SAME.—*Cotenant Purchasing at Foreclosure.—Rents and Profits.—Redemption.—Waiver.*—The enjoyment of the rents and profits of property during the redemption year by one cotenant is not a waiver of the right to receive a deed at the statutory time.  p. 93.

7. MORTGAGES.—*Foreclosure Sale.—Rents and Profits During Year for Redemption.*—The purchaser at a foreclosure sale under the act of 1861, where there is no redemption, is not bound to account for the rents and profits during such year, as they belong to such purchaser.  p. 94.

8. EQUITY.—*Laches.—Public Policy.—Estoppel.*—Laches as a defense to suits in equity is based upon grounds of public policy and is distinct from the doctrine of estoppel.  p. 94.

9. SAME.—*Laches.—Right of Action.*—A complainant in equity, who, with full knowledge of his rights, has been guilty of long delay, with-

out legal excuse, where another, as a practical result, has materially altered his position to his prejudice, so that it would be an injustice to render a decree in complainant's favor, will be denied relief. p. 95.

10. **EQUITY.**—*Laches.*—*Application.*—There is no fixed rule for the application of the doctrine of laches. Each case must depend upon its peculiar circumstances, and the question is addressed to the sound discretion of the chancellor. p. 96.

11. **TENANCY IN COMMON.**—*Laches of Cotenant.*—A cotenant who delays redemption of the common property, for speculative reasons, until another has been prejudiced, will be denied relief. p. 97.

12. **PLEADING.**—*Variance.*—*Recovery.*—Where the complaint alleges a legal title, recovery can not be had on proof of an equitable one. p. 97.

13. **PARTITION.**—*Laches.*—Where plaintiff and his mother were cotenants of lands, and he refused for several years to assert his rights as against her, knowing that she claimed to be the absolute owner, and she sold such lands to an innocent third party, who paid full value, the plaintiff can not recover. p. 98.

14. **EQUITY.**—*Fraud.*—*Attempt to Commit.*—*Relief.*—Where a cotenant, knowing his rights, purposely lies in wait for an unwary purchaser, before asserting them, he can not recover. p. 99.

From Lagrange Circuit Court; *Joseph D. Ferrall,* Judge.

Action by Edward Ryason against Sarah J. Dunten and others for possession and to quiet title. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*John W. Hanan, L. A. Foster* and *John M. Van Fleet,* for appellant.

*Charles W. Miller, James S. Drake, S. C. Hubbell* and *McClaskey & Dunten,* for appellees.

GILLETT, J.—This was a suit to recover possession of a two-thirds interest in an eighty-acre tract of land in Lagrange county. The first paragraph of the complaint was in ejectment; the second was to quiet title; the third purported specially to allege the facts. The latter paragraph appears, on the whole, also to be a suit to quiet title. Appellees pleaded the general denial and the ten, fifteen and twenty-

year statutes of limitations.   Appellant's counsel concede that all defenses were admissible under the general denial. The cause was submitted to the court for trial.   At the request of the parties the court filed special findings of fact, together with conclusions of law thereon.   The validity of each of the conclusions, which it is sufficient to state were all adverse to appellant, is drawn in question by assignments of error.

The findings disclose the following facts:   In the year 1872, one John Ryason died intestate, the owner of said tract-of land, leaving his widow, Hannah, surviving, and also two children, appellant, and a daughter by a former marriage.   The daughter died in 1880, and appellant claims her interest as sole heir; but as it appears that her one-third was purchased in 1875 by Charles Holmes, whom the widow had in the meantime married, the interest of said daughter, as the facts hereinafter stated will show, is not a factor in the decision of the case.   At the time of the death of John Ryason there was a mortgage against the land. This mortgage was regularly foreclosed in the year 1875, and, two years later, the real estate was sold by the sheriff under the decree.   During the year for redemption appellant's mother (said Hannah) became the owner of the sheriff's certificate by assignment.   Upon the expiration of the period fixed by law for redemption said Hannah took out a sheriff's deed, which was recorded in 1878.   Prior to the execution of said deed she had received the rents and profits as a tenant in common, but when the deed was delivered to her she entered into the full and exclusive possession of the land under the deed, claiming to own all of said land, and thereafter, until 1896, she paid the taxes, continued openly to claim said land by virtue of the deed, and received all of the rents and profits.   The value of the rents and profits from the death of the ancestor was $75 per year.   Appellant did not have actual knowledge that his mother had received a sheriff's deed for the land until 1895,

but he knew from the year 1881 that she was receiving and claiming all of the rents and profits. He knew in 1883 that she had during that year sold timber from said land, and that she claimed to own the proceeds. He knew in 1886 that she had mortgaged the land to the school fund for $1,000. He was aware in 1890 that she had renewed said mortgage, and that she was claiming to own all of said land. On February 14, 1881, appellant's mother was appointed his guardian, as the minor heir of his grandfather, and on August 8, 1889, appellant became of age, and at the next term of court she filed her report in final settlement, in which she accounted for the rents and profits received by her from the lands which had descended to him from his grandfather, but made no account of the rents and profits of the land in suit, and she also reported that she had expended, as guardian, a large amount in excess of the income from the lands descended from appellant's grandfather. It is found that she supported appellant without charge during the entire period of his minority. November 27, 1895, a decree in foreclosure on said school-fund mortgage was duly rendered against said eighty acres, in a suit wherein appellant's mother and her husband, Charles Holmes, were defendants, and a sale was therein ordered for the purpose of raising an amount approximating the sum of $1,200. In April, 1895, the land was sold on said decree, and it was bid in by the auditor, on account of the fund, for the amount of the principal, interest and costs due under said decree. There was no redemption, and in September, 1896, the auditor took out a sheriff's deed, and immediately recorded it. In April, 1896, appellant brought a suit in said county to recover one-third of said land, making the auditor and appellant's mother and her husband defendants. The defendants, other than the auditor, suffered a default. The latter filed answer, and, after the cause was submitted, appellant, on the advice of his counsel that the suit could not be maintained in said county, dismissed the action. May 26, 1897,

appellee Sarah J. Dunten obtained a contract of purchase for the land from the auditor, paying $400 in cash, and executing four notes for $200 each, due, respectively, in one, two, three and four years, with six per cent. interest per annum. She completed her payments in 1901, whereupon the auditor executed to her a deed, which she caused to be recorded in June of that year. This suit was commenced in February, 1902. There is a finding that appellee Sarah "bought said land in good faith, and had no actual notice or knowledge" that appellant claimed any right, title or interest in the same at the time she entered into said contract or at the time that she made said several payments and received said deed; that the first "actual notice" she had of appellant's claim was in February, 1902, when he made a demand upon her for possession. There is a finding that the auditor had "no actual knowledge or notice" that appellant claimed any right, title or interest in said land at the time of the execution of "said school-fund mortgage" (whether the finding refers to the first mortgage or the renewal mortgage we can not determine), and that said auditor had no "actual notice or knowledge" of any such claim at the time that he bid said land in. Appellant had knowledge in 1897 that appellee Sarah had purchased said land and had taken possession of it. At the time of said purchase the land was worth $1,000, and no more. Appellant resided with his mother in the town of Lagrange, in Lagrange county, from the time that she received the sheriff's deed in 1878 until the commencement of the suit. The concluding finding is as follows: "That plaintiff has never made any demand on said Hannah M. Holmes for an accounting for the rents and profits of said land or for timber sold by her, and never intended to claim said land from her, but was waiting for said land to come into the hands of a stranger before enforcing said claim in this suit."

Counsel for appellant contend that the sheriff's certificate, which was purchased by the mother, was held in trust for

the common estate; that the law applied the rents and profits and the proceeds of timber sold on the demand of the mother, thereby extinguishing it; that the receipt of the rents and profits during the year for redemption was a waiver of the right to take out a deed; that the fact that appellant was not of age until 1889, that his mother was his guardian, and that they were tenants in common, prevented the statute of limitations from running, and that there were not sufficient facts found by the court below to constitute an estoppel.

1.   We have no doubt that such was the trust relationship between appellant and his mother that upon an action seasonably brought she would not have been permitted to avail herself of a title built upon an encumbrance against the common estate.   Although there was back of the certificate of purchase a valid decree of foreclosure, yet the mother could not purchase the certificate without having it infected, while in her hands, with a resulting trust.

The doctrine that a trust relationship, independent of any circumstances of fraud or over-reaching, exists between tenants in common, does not appear to be recognized in England.   *Kennedy* v. *De Trafford* [1897], A. C. 180.   We do not call attention to this fact with a purpose of casting any doubt upon the view which appears to prevail generally in the United States as respects tenants in common holding under the same title, but we refer to the fact as a background for the proposition that even in this country the doctrine has never been recognized except as an equitable one.   *Rector* v. *Waugh* (1852), 17 Mo. 13, 57 Am. Dec. 251; *Elston* v. *Piggott* (1883), 94 Ind. 14; *Flagg* v. *Mann* (1837), 2 Sumn. 486.

2.   Counsel for appellant are in error in their assumption that the demand which the certificate represented was, by virtue of the trust relationship, merged in the common estate.   In all ordinary cases, the purchaser of an outstanding interest is entitled to hold the demand, whatever its

character, as a means of securing to him the payment of his cotenant's proportionate share. *Walkins* v. *Eaton* (1849), 30 Me. 529, 50 Am. Dec. 637; note to *Venable* v. *Beauchamp* (1835), 28 Am. Dec. 83.

3. In Freeman, Cotenancy and Partition (2d ed.), §156, it is said: "The purchase made by a cotenant of an outstanding title or encumbrance is not void, nor does the interest so acquired by him, or any part of it, by operation of law, vest in his cotenants. They may not wish to share in the benefits of his purchase; for, in their judgment, the title purchased by him may not be paramount to that before held in common. The law gives them a privilege which they may assert. This privilege consists in the right to obtain a conveyance of the title bought in, upon their paying their share of the price at which it was bought. The privilege may be waived by an express refusal to reimburse the cotenant for his outlay, or by such a course of action as necessarily implies such a refusal. The right of a cotenant to share in the benefit of a purchase of an outstanding claim, is always dependent on his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. A most natural and material inquiry, then, is what is a reasonable time. To this inquiry no positive answer can be given. In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances. The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in nowise attributable to an effort to retain the advantages, while he shirks the responsibilities of the new acquisition. If his delay in making his election known can be justly accounted for on the theory that he was waiting as 'a means of speculation for himself, by delaying until the rise of the land, or some event

yet in the future, shall determine his course, he will be deemed to have repudiated the transaction and abandoned its benefits.'" The greater part of the above section was quoted with approval by this court in *Stevens* v. *Reynolds* (1895), 143 Ind. 467, 52 Am. St. 422. See, also, 17 Am. and Eng. Ency. Law (2d ed.), p. 679, and cases cited.

4. The demand which the mother held was a certificate of sale issued under a valid decree of foreclosure. A right of redemption under the statute can only be exercised by a strict compliance with its requirements. *Turpie* v. *Lowe* (1902), 158 Ind. 314, 92 Am. St. 310. While we do not mean to intimate that in the circumstances of this case appellant was not entitled to redeem after the year, yet we do assert that such right was wholly equitable, and that, so far as the legal title was concerned, it passed to the mother when the statutory right of redemption expired. *Turpie* v. *Lowe, supra; Elston* v. *Piggott, supra.* The latter case was an action upon the part of a cotenant to redeem, and while the court held that there was not a trust relationship between the cotenants in that case, yet the observations of the court, relative to the right to redeem after the year, are in point, since the court, conceding, for the purposes of the discussion, that the appellee therein was entitled to maintain an action to redeem, said on page 28: "The deed made to the appellant gave him legal title, and if Mrs. Piggott be conceded a right to redeem, she should show affirmatively an offer to pay the sum necessary to redeem. It can not be doubted that the deed on the decree entitled the appellant, *prima facie* at least, to the rights of owner, and if Mrs. Piggott asks the interposition of equity she must show an offer to redeem. This is required by the familiar rule that he who asks equity must do equity. It follows, that even upon the concession that Mrs. Piggott had a right to redeem, she, and not the appellant, must move in that direction. He has at least a *prima facie* right, and, granting that it is only *prima facie,* still Mrs. Piggott must do equity, and this

imposes upon her the duty of showing her readiness and ability to do what equity requires. It was not a mere mortgage lien which appellant bought, for a decree had barred the equity of redemption and had completely put an end to the right created in favor of mortgagors by the courts of chancery. There was, it is true, a statutory right, but this right, if not exercised according to law, could not be exercised at all, and the failure to exercise it divested all title. The law gave an opportunity to redeem, and we do not think one acting in good faith, and taking no advantage of position or relationship, was bound to offer a new opportunity. The deed executed on the decree conveyed title, and if this title could be defeated in any event, it could only be in a case where there was an offer to do equity."

5. So far as the findings show, appellant could not have maintained an action against his mother for rents and profits received prior to the time that she began to assert title in herself, since it does not appear that she received rents from a third person. *Crane* v. *Waggoner* (1866), 27 Ind. 52, 89 Am. Dec. 493; *Humphries* v. *Davis* (1884), 100 Ind. 369; *Carver* v. *Coffman* (1886), 109 Ind. 547; *Carver* v. *Fennimore* (1888), 116 Ind. 236; *Bowen* v. *Swander* (1889), 121 Ind. 164; *Schissel* v. *Dickson* (1891), 129 Ind. 139. And see *Bruce* v. *Thompson* (1854), 26 Vt. 741, 747. But, even if he had a cause of action on that account, he might have waived the right after he became of age, and, indeed, he might then have waived the very action which he is now prosecuting. Freeman, Cotenancy and Partition (2d ed.), §156. These considerations also serve to indicate that it was necessary for the legal title to pass in the meantime, since appellant might not have seen fit to insist upon his equitable rights.

6. It can not, with any show of reason, be contended that the enjoyment of the rents and profits during the statutory period of redemption, there having been no agreement, express or implied, to apply the value thereof upon

the certificate, would be a waiver of the right to take out a deed at the end of the year. *Turpie* v. *Lowe, supra.*

.7.   Indeed, we do not think that under the law of 1861 (Acts [s. s.] 1861, p. 79), which was in force at that time, a holder of a certificate of sale, who was in possession, was bound to account for the rents and profits received by him during the year, where there was no redemption. *Bryson* v. *McCreary* (1884), 102 Ind. 1. The legal title passed with the expiration of the period of redemption fixed by statute, and whatever right appellant had to redeem afterwards, or to seek an accounting in connection therewith, was only to be had in an action wherein equitable principles must prevail. In this view it is not necessary to determine whether the statutory period in which to bring an action has elapsed, since the case can be disposed of on the ground that appellant has been guilty of laches.

8.   Laches, where the delay is short of the statutory period of limitation, is peculiarly a ground for denying relief in equity. *Patterson* v. *Hewitt* (1904), 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed.—. According to the dictum of Lord Chancellor Camden, in *Smith* v. *Clay* (1767), Ambl. 645, and as reported in note to *Deloraine* v. *Brown* (1791), 3 Bro. C. C. 633, 639, which has been extensively quoted by the courts, "Nothing can call forth this court [a court of equity] into activity, but conscience, good faith, and reasonable diligence; where these are wanting, the court is passive, and does nothing." The doctrine of laches is based upon grounds of public policy (18 Am. and Eng. Ency. Law [2d ed.], 98, and cases cited), and we may properly add that it should not be confounded with the defense of estoppel. See note to *Neppach* v. *Jones* (1891), 23 Am. St. 148; 2 Pomeroy, Eq. Jurisp. (3d ed.), §§816, 817.

It was said by Mr. Justice Brewer, while on the circuit: "No doctrine is so wholesome, when wisely administered,

as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many." *Naddo* v. *Bardon* (1892), 51 Fed. 493.

9. A complainant in equity, who, with full knowledge of his rights, has been guilty of long delay, without legal excuse, where another, as a practical result, has materially altered his position to his prejudice, so that it would be an injustice to render a decree in the complainant's favor, will be denied relief. *Patterson* v. *Hewitt, supra; Ridgway* v. *Newstead* (1861), 3 DeG. F. & J. *474; *Schlawig* v. *Purslow* (1894), 59 Fed. 848, 8 C. C. A. 315; *Fraker* v. *Houck* (1888), 36 Fed. 403; *Helfenstein* v. *Reed* (1894), 62 Fed. 214, 10 C. C. A. 327; *Wetzel* v. *Minnesota, etc., R. Co.* (1893), 56 Fed. 919; *Johnson* v. *Toulmin* (1850), 18 Ala. 50, 52 Am. Dec. 212; *Walker* v. *Warner* (1899), 179 Ill. 16, 53 N. E. 594, 70 Am. St. 85; *Holman* v. *Winterboer* (1899), 107 Iowa 270, 77 N. W. 1060; *Royal Bank of Liverpool* v. *Grand Junction R., etc., Co.* (1878), 125 Mass. 490; *Peabody* v. *Flint* (1863), 6 Allen 52; *Tash* v. *Adams* (1852), 10 Cush. 252; *Raymond* v. *Flavel* (1895), 27 Ore. 219, 40 Pac. 158; *McGrew* v. *Foster* (1886), 113 Pa. St. 642, 6 Atl. 346; *Chase* v. *Chase* (1897), 20 R. I. 202, 37 Atl. 804. "Laches," said the Supreme Court of the United States, in *Galliher* v. *Cadwell* (1892), 145 U. S. 368, 373, 12 Sup. Ct. 873, 36 L. Ed. 738, "is not like limitation, a mere matter of time; but principally a question of the in-

equity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relation of the property or the parties."

10.   There is no fixed or determinate rule for the application of the doctrine of laches.   Each case must depend upon its own peculiar circumstances.   In other words, the question is addressed to the sound discretion of the chancellor. *Rayner* v. *Pearsall* (1818), 3 Johns. Ch. *578; *McQuiddy* v. *Ware* (1873), 20 Wall. 14, 22 L. Ed. 311; *Twin-Lick Oil Co.* v. *Marbury* (1875), 91 U. S. 587, 23 L. Ed. 328; *Brown* v. *Buena Vista County* (1877), 95 U. S. 157, 24 L. Ed. 422; *Underwood* v. *Dugan* (1891), 139 U. S. 380, 11 Sup. Ct. 618, 35 L. Ed. 197; *Morse* v. *Hill* (1883), 136 Mass. 60, 65; *Millish's Estate* (1850), 1 Pars. Eq. Cas. 482; *Bell* v. *Wood* (1897), 94 Va. 677, 683, 27 S. E. 504; *Obert* v. *Obert* (1858), 12 N. J. Eq. 423; *Young* v. *Young* (1893), 51 N. J. Eq. 491, 27 Atl. 627; *Hercy* v. *Dinwoody* (1793), 2 Ves. Jr. 87, 93; *Pomfret* v. *Windsor* (1752), 2 Ves. Sr. 472, 483.   The complainant in a court of equity is an actor, and, as his claim must be conscionable, he must recover, if at all, upon the inherent justness of his claim. As the very existence of the doctrine of laches implies that there is at least some technical defect in the title of the defendant or in his cause of defense, it follows that courts are frequently called on to determine on which side is the balance of justice.   It was said in *Lindsay Petroleum Co.* v. *Hurd* (1874), L. R. 5 P. C. 221: "The doctrine of laches in courts of equity is not an arbitrary or a technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases lapse of time and delay are most material.   But in

every case, if an argument against relief, which otherwise would be just, is founded upon mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defense must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are, the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other." "It may happen," said Baggallay, L. J., in *Boswell* v. *Coaks* (1884), 27 Ch. D. 424, 456, "that there has been such an amount of laches on the part of those seeking relief that the court may be of opinion that more injustice would be, upon the whole, done by granting than by refusing relief."

11. Coming to the question of the equitable right of redemption, there are authorities which directly hold that the cotenant who delays for speculative reasons until another has been prejudiced by his nonaction will be denied a remedy. *Mandeville* v. *Solomon* (1870), 39 Cal. 125; *Potter* v. *Herring* (1874), 57 Mo. 184. In *Walker* v. *Warner, supra,* it was said: "The right of redemption being a purely equitable estate, a court of chancery will not protect and enforce it unless equitable considerations require it to do so. As the right is the creation of a court of chancery, it can only be asserted in such court when its assertion is plainly equitable. * * * It may, therefore, be lost, unless it is asserted within a reasonable time, and before the situation of the parties has changed, and the rights of others have intervened, or improvements have been made. In other words, the right may be lost by laches." See, also, in this connection, *Turpie* v. *Lowe* (1902), 158 Ind. 314, 92 Am. St. 310.

12. In the first paragraph of his complaint appellant alleges that his interest is "an absolute, legal title in fee simple." It is clear that he can not recover on this para-

graph. *Groves* v. *Marks* (1869), 32 Ind. 319; *Stout* v. *McPheeters* (1882), 84 Ind. 585; *Johnson* v. *Pontious* (1888), 118 Ind. 270. As to the paragraphs to quiet title, equitable principles are to be given due consideration in the application of the evidence introduced upon the trial. See *Seymour Water Co.* v. *City of Seymour* (1904), 163 Ind. 120, and cases cited.

13. It is contended by counsel for appellant that the findings do not exclude the idea that the appellee Sarah J. Dunten had constructive notice of appellant's claim. We need not pause precisely to consider the legal effect of the findings. It is not questioned that there are valid findings that said appellee was a purchaser without actual knowledge, who bought in good faith, and paid value. At the least, she was not a speculator, and she gave for the property all that it was worth. As some of the authorities from which we have quoted show, the chancellor may be called upon to balance the claims of the parties to determine who has the greater equity. As against the hardship which an adverse decree would impose upon appellee there must be contrasted the light in which the findings place appellant.

It is laid down in *Lane & Bodley Co.* v. *Locke* (1893), 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049, that a party who refrains from bringing an action on account of prudential reasons is entitled to less consideration by a court of equity than if his conduct had been merely that of inaction. Here it appears that appellant never intended to assert his claim against his mother, the person with whom, of all others, he ought to have reckoned on coming of age. If he did not intend to assert it as against her, a court of equity should surely treat that determination as a waiver as against her remote grantee, who bought in good faith and paid value. In this view of the case, and taking the findings as a whole, we think that appellant is charged with acquiescence, a defense which implies active assent. 1 Cyc. Law and Proc., 630; 18 Am. and Eng. Ency. Law (2d ed.),

98, 100.  And see *Mandeville* v. *Solomon* (1870), 39 Cal. 125; *Potter* v. *Herring* (1874), 57 Mo. 184.

14.  But when we consider the last finding made by the court below we are at a loss to understand on what ground there could be a decree in appellant's favor.  That a court of equity—a court of conscience—should extend relief to a man who had not only slept upon his rights, but had actually been lying in wait for an unwary purchaser, is a proposition that we can not entertain.

Judgment affirmed.