# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 15233.—Decree affirmed.)

G. B. LUTYENS *et al.* Appellees, *vs.* HERMAN AHLRICH *et al.*
Appellants.

*Opinion filed April 18, 1923.*

1. TRUSTS—*resulting trust arises by operation of law.* A resulting trust does not arise out of nor is it dependent upon an agreement between the parties but is raised by operation of law upon a particular state of facts, the most frequent case being where one person pays the purchase money for property and the conveyance of the legal title is made to another.

2. SAME—*intention to create resulting trust is not necessary—presumption.* Evidence of intention of the parties to create a resulting trust is not necessary to its existence, but if one pays the purchase money for land and the deed is made to another the law presumes a trust.

3. SAME—*when burden is on holder of legal title to prove no trust resulted.* Where a party takes title to property purchased with another's money the presumption is in favor of a trust resulting to the party paying the consideration, and the burden is on the party holding the legal title to show it was intended he should have some beneficial interest in the property.

4. SAME—*when resulting trust takes effect.* The trust which results when one party takes title to property purchased with another's money must result, if at all, at the instant the deed is made to the grantee.

5. SAME—*trust results in favor of parties contributing toward purchase of land.* Where two or more persons together advance

the purchase price for land and title thereto is taken in the name of one of them a trust will result in favor of the others, and all will take the title in equity in undivided shares in 'the property, proportioned to the respective shares of the purchase money furnished by them.

6. SAME—*there is no presumption of advancement where wife contributes to purchase of land.* Where a man pays for property and causes it to be conveyed to his wife or child the presumption is that it was intended as a gift or an advancement, as there is a legal obligation resting upon the father to support the wife or child, but no such presumption exists where the wife furnishes or contributes toward the purchase money and the deed is taken in the name of the husband.

7. SAME—*when trust results in favor of wife contributing first payment on land taken by husband.* Where a husband takes a conveyance of a farm and the purchase money paid down is furnished by the wife, the balance being evidenced by notes secured by mortgage, a resulting trust will be declared in a partition suit by the wife's heirs-at-law where no further money was put into the land but more loans were made as the mortgages were paid off, leaving the land incumbered practically as much as it was when purchased.

8. LACHES—*the courts are lenient with delay in transactions between persons in confidential relations.* Whether an action is barred on account of *laches* is to be determined from the particular facts and circumstances of each case, and courts indulge great leniency when the delay is due to intimate personal relations existing between parties reposing confidence in one another.

9. SAME—*when laches will bar a right in equity.* Where, by reason of voluntary delay of a party asserting a right in equity, the evidence of the matters in dispute have been lost or become obscured so that a court is practically precluded from ascertaining the truth, or the conditions have so changed as to make enforcement of the alleged right inequitable, courts of equity hold that the party claiming the right is barred by *laches.*

10. SAME—*delay, to constitute laches, must result in disadvantage.* Mere delay will not constitute *laches,* but the delay must be such as to work to the disadvantage of the other party.

11. SAME—*when laches will not bar enforcement of a resulting trust.* Where a wife furnished all the money paid down at the time her second husband took the conveyance of a farm in his own name, her heirs-at-law will not be barred by *laches* in having a resulting trust declared in their suit for partition, where they lived in the family with their step-father and his children and the most cordial and friendly relations existed until the husband's death, shortly after which the original bill was filed.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WILLIAM L. PATTON, and GEORGE M. MORGAN, for appellants.

JOHN M. PFEIFER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court on appeal from the circuit court of Sangamon county, where a decree was entered in favor of appellees declaring a resulting trust in 140 acres of land in Sangamon county and for partition. The original bill was filed in the Sangamon county circuit court on February 23, 1920, by G. B. Lutyens and Henry E. Lutyens, appellees here, and alleged that Margaret Ahlrich, the mother of complainants, and John Ahlrich, her husband, their step-father, on November 12, 1900, bought 140 acres of land in Sangamon county for the sum of $10,740; that the title thereto was taken in the name of the husband, though all the cash paid down at the time of the transaction, in amount $3000, was the money of Margaret, and the balance of the purchase price for the land was evidenced by three notes secured by mortgages on the property in amount of $7740; that the mortgages were renewed from time to time until the indebtedness at the time of filing the bill was $7600, and the only amount paid on the land was $3000. The original bill stated the mother of complainants died intestate on February 26, 1913, leaving John Ahlrich, her husband, G. B. and Henry E. Lutyens, her children by a former marriage, and Herman Ahlrich, Edward Ahlrich, Sophia Wahlsmith and Lena Jones, her children by Ahlrich; that Ahlrich died testate October 5, 1919, leaving surviving him, Herman Ahlrich, Sophia Wahlsmith, Lena Jones, Edward Ahlrich and Emma Goosman, (a daughter by a former marriage,) his children and only heirs-at-law. The bill further alleged Margaret was

at the time of her death the equitable owner of said real estate on account of a resulting trust in her favor, except a small portion thereof described, which had been previously sold by John and Margaret for $141.67; that all of said real estate is subject to a mortgage in amount of $7600. The bill prayed that title be vested in the parties as set out therein and that partition of the property be made. Answers were filed by Sophia Wahlsmith, Edward Ahlrich and Herman Ahlrich individually, and also by Herman as executor under the will of Ahlrich. The answers in substance denied the land was paid for with $3000 of Margaret's money and denied any trust resulted in her favor. The answers set up *laches* on the part of Margaret and appellees, in that she never made any claim to the land or any interest therein and appellees never claimed any interest therein for nearly seven years after the death of their mother. The answer of Herman Ahlrich, executor under the will, also averred that the real estate is subject to the terms and conditions of his father's will, which was executed December 21, 1917, and admitted to probate November 8, 1919. An amended bill was later filed on February 21, 1921, wherein the two daughters of John and Margaret, namely, Sophia Wahlsmith and Lena Jones, were made parties complainant instead of defendants, as in the original bill, and further alleged that another child, Elizabeth, had survived her mother. The amended bill set forth the death of this child intestate in 1915, leaving her father and seven brothers and sisters surviving. The amended bill alleged the seven brothers and sisters were the equitable owners of the property in question and set up the respective undivided portions to which each was entitled by descent. The answers formerly filed were ordered to stand as answers to the amended bill. After replications filed the cause was referred to a master in chancery to take the proof and report his conclusions of law and fact. The master made his report, recommending a decree as prayed in the bill. Ob-

jections thereto were overruled by the master and as exceptions were overruled by the court. The report of the master was approved and confirmed by the court and a decree entered in accordance with the prayer of the bill as amended. From that decree this appeal is prosecuted by Herman and Edward Ahlrich, and by Herman as executor.

Appellees contend a resulting trust arose at the time of the purchase of the property in favor of their mother, Margaret, she having furnished $3000, which was all the cash paid at the time of the purchase; that the husband, John Ahlrich, at no time furnished any of the money paid for the farm. Appellees claim the right to share equally with their brothers and sisters in the property of their mother, and their counsel says the only question here involved is whether all the mother's children shall share in her property, or whether it shall be divided by the father, in accordance with his will, among only four of the mother's children, who were also his children. Appellants contend no resulting trust arose in favor of Margaret; that if a trust was created in favor of her, it would not be for more than three-tenths of the land, because she never furnished more than three-tenths of the purchase price and never intended or expected to furnish any more; that appellees were guilty of *laches* in making no claim to the land until about seven years after the death of their mother.

It appears from the evidence produced on the hearing that appellees, G. B. and Henry E. Lutyens, are children of Margaret Ahlrich by a former husband; Emma Goosman is a daughter of John Ahlrich by a former wife; Herman Ahlrich, Edward Ahlrich, Sophia Wahlsmith, Lena Jones and Elizabeth Ahlrich (who died in 1915) are children born to John and Margaret. The property here involved was acquired in November, 1900, by purchase from one Johnson and wife, and the title thereto was taken in the name of the husband, John Ahlrich. The transaction occurred at the Farmers National Bank in Springfield, in

the presence of Edward D. Keys, then president of that institution, who also bought some land about the same time from the same grantors. John and Margaret were German people and spoke very broken English. They were present at the bank with one of appellees, G. B. Lutyens, through whom the business was done. The consideration for the purchase was $10,740. The cash payment of $3000, made at the time by Margaret, was evidenced by a cashier's check for that sum issued by the State National Bank of Springfield to Margaret, which check was issued to her in lieu of a certificate of deposit held by her, dated in June, 1900, in amount of $3000 and issued by the same bank. The cashier's check was indorsed by Margaret by her mark and delivered to Keys, who applied the payment upon the purchase price of the land. The balance of the purchase price ($7740) was furnished by Keys or the bank and was secured by three notes and mortgages dated November 10, 1900, made to Keys and executed by John and Margaret, one for $2000, due three years from date, one for $5000, due six years from date, and one for $740, due one year from date. John and Margaret, with their children, took possession of the farm about March, 1901, and occupied and worked the land thereafter. Appellees continued to reside and work upon the farm during their vacations from medical school till about 1905 or 1906, when they began to practice medicine in Sangamon county, after having received their medical education. It was proved Ahlrich paid $1500 of their expenses at the medical college. Two of the daughters lived with their parents till their marriage, and the other daughter resided at home till her death, in 1915. The mother died there in 1913 and the father in 1919. Herman and Edward were the only two children residing at home with the father at the time of the latter's death. During the residence of Ahlrich and family on the farm the land was assessed in his name, the taxes were paid in his name and insurance policies on the buildings issued

in his name, payable, in case of loss, to certain mortgagees. The proof tends to show that two of the mortgages given at the time of the purchase of the land were later paid. The mortgage for $2000, due in three years, was paid November 7, 1903, and the mortgage for $740, due in one year, was paid November 7, 1901. Another mortgage for $1500 was given by John and Margaret on September 15, 1906, due in one year. The original $5000 mortgage given at the time of purchase, and the last mortgage mentioned, dated September 15, 1906, were seemingly paid by another mortgage given by Ahlrich and wife on November 10, 1908, in amount of $6500, due in five years. A mortgage for $1500 was executed by Ahlrich and wife on November 14, 1908, due in two years, and this mortgage seems to have been paid on February 28, 1911. A further mortgage was given by Ahlrich and wife for $1500 on February 14, 1911, due on November 10, 1913. So at the time of the death of Margaret there was a mortgage indebtedness of $8000 against the property. This indebtedness was taken care of by Ahlrich, widower, on November 10, 1913, at which time he gave a mortgage on the property for $7600 to Ben F. Caldwell, which indebtedness existed at the time of the filing of the bill. Evidently Ahlrich must have paid $400 of the indebtedness of $8000 prior to or at the time of giving the last mortgage for $7600. In five of the seven mortgages given by John and Margaret, G. B. Lutyens witnessed the signature of his mother by her mark. Ahlrich died testate in 1919, and by his will, which was made December 21, 1917, and admitted to probate on November 8, 1919, he gave to Emma Goosman, a daughter by his first wife, $500, and to G. B. and Henry E. Lutyens each the sum of $250, making these legacies a lien upon the land here involved. He provided that the balance of his estate, including said land, should be divided equally among his children, Herman Ahlrich, Edward Ahlrich, Sophia Wahlsmith and Lena Jones.

308—2

The evidence does not show that there was any discussion at the time the land was bought as to whom the deed should be made. Banker Keys testified about the transaction, stating the nature of the $3000 cash payment made at the time of purchase; that the balance of the consideration ($7740) was furnished by him and three mortgages in that amount given to him by John and Margaret Ahlrich. He further testified the business for the Ahlrichs at the time of the purchase of the property was transacted by G. B. Lutyens; that Lutyens talked for them in the transaction and explained the transactions to his father and mother, and that they understood them. It was also shown that Margaret received some money from her father's estate, and that both John and Margaret had their own separate bank accounts. It is admitted in the brief of the appellants that $3000 of the money of Mrs. Ahlrich went in the purchase of the farm.

A resulting trust does not arise out of nor is it dependent upon an agreement between the parties but is raised by operation of law upon a particular state of facts. The most frequent facts out of which a resulting trust arises are where one person pays the purchase money for property and the conveyance of the legal title is made to another. (*Mathis* v. *Stufflebeam,* 94 Ill. 481; *Baughman* v. *Baughman,* 283 Ill. 55.) Evidence of intention of the parties to create a resulting trust is not necessary to its existence. If one pays the purchase money for land and has the deed made to another, in the absence of all evidence of intention the law presumes a trust. (1 Perry on Trusts, secs. 124, 126; 1 Tiffany on Real Property, 397.) The presumption is in favor of the trust resulting to the party paying the consideration, and the burden is on the one holding the legal title to show it was intended he should have some beneficial interest in the property. (1 Perry on Trusts, sec. 139.) The trust must result, if at all, at the instant the deed is

made to the grantee. (*Stephenson* v. *McClintock,* 141 Ill. 604.) It has also been held that where two or more persons together advance the purchase price for land and title thereto is taken in the name of one of them a trust will result in favor of the others, and all of them will take the title in equity in undivided shares in the property, proportioned to the respective shares of the purchase money furnished by them. (*Crawford* v. *Hurst,* 299 Ill. 503.) It is the rule that where a man pays for property and causes it to be conveyed to his wife or child, the presumption is that it was intended as a gift or an advancement, the chief reason therefor being that there is a legal obligation resting upon the father to support such wife or child. However, that rule is not applicable and no such presumption exists where the wife furnishes the purchase money and the deed is taken in the name of the husband. *Wright* v. *Wright,* 242 Ill. 71.

As stated herein, the mortgage indebtedness made by Ahlrich and wife at the time of the purchase of the property was $7740. During 1911 the Ahlrichs sold a small portion of the land, receiving therefor about $141. It is true that the record appears to show two mortgages,—one for $2000 and another for $740,—given at the time of purchase, were paid off by someone. At the time of the death of the wife, in February, 1913, the mortgage indebtedness was $8000. These mortgages were satisfied in November, 1913, and a new mortgage given by Ahlrich, then a widower, for $7600. The record shows some of the mortgage loans were renewed from time to time and some mortgage loans were paid. It does not definitely appear whether the money was borrowed on other loans to pay the mortgages which were paid or not, but it does appear what amount of indebtedness was placed on the land when purchased, what amount of indebtedness still existed thereon at the time of the death of the wife, as well as the amount of mortgage indebtedness continuing on the property at the time the bill was filed. As

a result, it may be said that practically all the money paid for the property and now in the farm is the original $3000 furnished by Mrs. Ahlrich in 1900.

It is contended by appellants that appellees have been guilty of *laches,* in that they made no claim to the property until about a month after the death of their step-father, which was almost seven years after the death of their mother. John and Margaret Ahlrich lived on the land with their family after 1901 and tilled the soil. The two daughters, Sophia and Lena, lived there till they were married. The appellees, the Lutyens, resided there till they began the practice of medicine. Elizabeth lived on the farm till her death, in 1915, and the two boys, Herman and Edward, continued after their mother's death to live with their father on the farm until he died, in October, 1919. So far as the record shows, the relations between appellees and other members of the family were very friendly. One or the other of the two Lutyens, both of whom have been practicing physicians since about 1906, have ministered to or assisted in the treatment of most all the members of the Ahlrich family during their respective illnesses. At the time of the death of the mother, all the children except G. B. and Henry E. Lutyens were still at home. Ahlrich continued thereafter and until his death, a period of almost seven years, to have the use, benefit and profits from the land. No action was taken by the appellees until after the death of their step-father. In considering the question of *laches* we do not think that doctrine applicable to this case. Whether an action is barred on account of *laches* is to be determined from the particular facts and circumstances of each case. Where by reason of the voluntary delay of a party in asserting a right in equity the evidence of the matters in dispute has been lost or become obscured, so that a court is practically precluded from ascertaining the truth of the matters in dispute, or the conditions have so changed as to make enforcement of the alleged right inequitable,

courts of equity, in the interest of justice, will hold that by the delay in asserting the right the party claiming it is barred by *laches*. (*Reynolds* v. *Sumner*, 126 Ill. 58; 21 Corpus Juris, 217-219.) Mere delay will not constitute *laches*, but the delay must be such as to work to the disadvantage of the other party. (10 R. C. L. 396.) In considering the question of *laches*, courts indulge great leniency when the delay is due to the intimate personal relations existing between the parties and the confidence reposed in one by another. (10 R. C. L. 402, 403.) It was said in *Ryder* v. *Emrich*, 104 Ill. 470, which was a case involving a resulting trust: "It is also urged that the great delay in asserting their rights, having waited until after their father's death, is evidence that the claim of appellees is fictitious. It seldom occurs, as experience teaches, that a child sues a parent, whatever the wrong or the right of recovery, and when it is done, so unnatural an act renders the child odious to the community. It would not, therefore, be expected that they would have sued him, however just their claim." The proof shows the relations of all the members of the Ahlrich family were friendly and intimate. The Lutyens, until they graduated in medicine, lived in the family, and they appear to have treated their step-father with respect and he so treated them. The most cordial and friendly relations existed up to the death of the step-father. Under those conditions, and the delay not having prejudiced appellants in the matter of proving who furnished the money which was paid for the land nor in causing any change in conditions or positions which would make it inequitable to enforce the trust, we do not think a case was made by appellants calling for the application of the doctrine of *laches*.

The decree of the circuit court is affirmed.

*Decree affirmed.*