STEIFEL ET AL. *v.* FARMERS STATE BANK.

[No. 13,297.   Filed September 25, 1929.]

*Redmond & Emerick* and *Hanan & Selleck,* for appellants.

*Dunten & Dunten* and *L. L. Burris,* for appellee.

McMAHAN, C. J.—This is an action by Louis Steifel and Ben Levy, appellants herein, against the Farmers State Bank of Stroh, for money had and received. The court found the facts specially. The questions presented for decision relate to the conclusions of law. The salient facts are, in substance, as follows:

On July 1, 1920, Charles B. Bower, owner and operator of a grain elevator at Helmer, in Steuben county, and engaged in conducting a grain, feed, flour and coal business, and appellants, who were then and now are grain merchants, and located at Fort Wayne, entered into a written agreement, by the terms of which appellants were to advance to Bower money for the conduct of his business, such money to be deposited in the name of Bower in a bank to be selected by appellants and Bower. The money so furnished and deposited was to be subject to Bower's check in the conduct of his business. Bower was to issue checks upon said fund only for the purchase of grain and other merchandise necessary in the conduct of his business. The money furnished by appellants was to be deposited and kept in the bank separate and distinct from any and all other funds belonging to Bower personally, and at all times subject to the order and check of appellants, and at all times was to be the property of appellants. Upon termination of the contract by lapse of time, death or otherwise, appellants were given the right to withdraw all funds then on deposit. Bower was to conduct the elevator and the other business, give it his entire time, and, at his own expense, furnish all labor and appliances required. The title to all merchandise

purchased was to be in appellants, who were given the exclusive right to sell and dispose of the same, as well as the right to purchase all fuel, feed and flour used in conducting the business. Appellants, upon the termination of the contract, were given the right to take possession of all merchandise and dispose of the same, accounting to Bower or his representatives for his share of the profits. Bower was required to keep an inventory, and report to appellants with respect to the business from time to time as required. The profits were to be divided, two-thirds to Bower and one-third to appellants. Bower was required to and did, concurrently with the execution of the contract, execute an undertaking with surety to the effect that he would faithfully carry out the contract and pay over to appellants all money due them, and, on expiration of the contract, repay them all money placed in his hands by appellants.

Bower operated the grain elevator pursuant to the contract from July 1, 1920, to April 1, 1924, during which time he bought and sold large quantities of grain and other commodities. The money furnished by appellants and the money received by Bower was at first deposited in the Farmers Bank of South Milford. In January, 1921, that bank was reorganized under the name of "Peoples State Bank." The reorganized bank took over all the assets of the old bank, assumed all its obligations and continued to conduct business in the building formerly occupied by the old bank. A checking account was opened in the old bank July 1, 1920, and designated "Charles B. Bower Grain Account," and was transferred to the new bank and carried under the same name. The account was so carried for the purpose of identifying and keeping the moneys of appellants separate from the individual money of Bower. Later, Bower deposited in the bank money accruing from the business aggregating $3,062.89, and appellants made

deposits aggregating $35,000. Before the contract was terminated, Bower, in the conduct of the business, drew his checks against said account in payment of commodities dealt in by the parties, such checks being signed by Bower as drawer without any other designation. All checks bore the printed inscription "Charles B. Bower, Grain, flour, feed and coal," and in no way showed that appellants had any interest in such bank account. All of said checks were from time to time paid by the drawee bank and charged to said account. On May 7, 1919, Bower owed appellee $4,000, evidenced by a promissory note of that date, upon which Francis Bower and William Deitz were sureties. This note was later renewed with the same sureties, and the former note surrendered to Bower. On January 21, 1921, Bower paid appellee $2,000, by check drawn on said Charles B. Bower Grain Account. The drawee bank, in due course of business, paid said check and charged it to the said grain account. When Bower gave that check to appellee, he gave appellee a new note for $2,000, with Deitz as sole surety, and thus took up or renewed the former $4,000 note on which Francis Bower and Deitz were sureties, and on March 16, 1921, Bower took up the $2,000 note with a like check, which was also paid and charged to said grain account. Bower, when he issued each of said checks, intended that it should be charged against the grain account, which was actually done. Bower, during 1920 and 1921, carried a small checking account with appellee; the average balance of such account did not exceed $50. When Bower gave said two checks to appellee, he owned the elevator at Helmer and two vacant lots, and no other property. The elevator was valued at $9,000 and the two lots at $500. Bower, at that time, owed something more than $8,000, including the $4,000 owing appellee, and was, during that time, and ever since, a married man residing with his family in Helmer. Ap-

pellee, at the time, had knowledge of the financial responsibility and collectibility of Bower. On March 4, 1927, and before commencing this action, appellants, during banking hours, demanded of appellee that it pay appellants the $4,000 so received from Bower. Bower was required to and did make weekly reports to appellants of all money received by him from sale of commodities and of all money paid out by him in the conduct of the business, but he withheld from them the fact that he had issued the two checks to appellee, and appellants had no knowledge of such checks and the issuing and paying of them until April 20, 1921. Appellee had no knowledge that said checks were charged against said grain account. A few days prior to July 1, 1920, appellant Levy informed the cashier of appellee bank that appellants intended to enter into an arrangement with Bower in regard to the grain business at Helmer, whereby they would furnish the money, and for the use of the same would receive a share of the profits. A few days after the contract with Bower was executed, Levy informed said cashier that an arrangement had been entered into between appellants and Bower. Appellee, in good faith, received each of said $2,000 checks, without notice or knowledge of any right or interest claimed by appellants in or to the money against which the checks were drawn, and without any knowledge of any want of authority on the part of Bower to use said money in payment of said notes. Appellee had no knowledge of any claim asserted against it growing out of the act of Bower in the use of the money in payment of said notes until some time in the year 1926, while appellants learned of such use of the money by Bower on April 21, 1920. When the $4,000 note was executed to appellee, and thenceforth to January 24, 1921, the makers of said note were solvent and able to pay the same, and so continued until after March 16, 1921, but when appellee

first received notice of the claim and demand of appellants, Charles Bower and Deitz had become and are still wholly insolvent, and the other surety owned and possessed property subject to execution of a value not to exceed $600. On April 20, 1921, when appellants discovered Bower had used said money in payment of the notes of appellee, they received from Bower, for their demand against him, two negotiable notes each for the sum of $2,000, and signed by Bower with Deitz as surety. These notes were later renewed by the giving of two other notes for $2,000 each, one signed by Bower with Deitz and Amos Frederick as sureties, and the other with Deitz and Asa Glasglow as sureties. These notes were not taken in payment of the debt but only as evidence thereof. In the fall of 1924, appellants commenced an action on each of the last two notes against the makers and recovered a judgment for $2,597.60 against the makers of each of the two notes last mentioned. A new trial was later granted Amos Frederick.

Upon these facts, the court concluded appellants were not entitled to recover, and judgment followed.

Appellants contend that the court erred in its conclusions of law, upon the theory that they are entitled to recover the $4,000, because it was wrongfully taken from them by Bower and by him used in payment of his personal indebtedness to appellee. In support of this contention, they cite and rely on *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N. E. 1105, 112 Am. St. 222, 6 Ann. Cas. 718, and *Peoples State Bank* v. *Kelly, Rec.* (1922), 78 Ind. App. 418, 136 N. E. 30. It is to be observed, however, that no question of laches was involved in either of these cases. In the instant case, appellee, by answer, sets up facts tending to show laches on the part of appellants such as in equity would prevent a recovery. From the special finding of facts, it appears that appellants, in April, 1921, learned that Bower had

converted the $4,000, and had used the same in paying his indebtedness to appellee. Bower had also given appellants a bond with surety conditioned for the faithful performance of his contract and to secure the payment of all money received by him in the conduct of the business. When appellants learned of the fact that Bower had so used their money, Bower and his surety were financially responsible and appellants could have collected the $4,000 from Bower and the surety, but, instead of attempting to realize on the bond, they took notes from him and gave him further time. At that time, Bower and the sureties on the notes held by appellee were also solvent, and payment of the debt owed appellee by Bower could have been enforced by execution. Although appellants, in April, 1921, learned of the fact that Bower had paid the $4,000 to appellee, they took no steps to inform appellee of the fact that Bower had tortiously taken and used their money, until March 4, 1927, which was more than six years after the first $2,000 was paid to appellee, and but a few days less than six years after the second check had been given to appellee, and almost six years after appellants had learned of such payments. During this delay, Bower and the sureties on the notes held by appellee became wholly insolvent, and possessed of no property subject to execution. As a result of appellants' delay in giving appellee notice of its claim, appellee is not now able to collect the $4,000 from Bower or the sureties on the notes. If appellee is now compelled to pay to appellants the $4,000 so received by it from Bower, appellee will suffer a loss equal to the amount so paid appellants. On the other hand, if appellants had, within a reasonable time after learning that Bower had wrongfully paid their money to appellee, informed appellee of the facts, the latter could have collected the money from Bower and would have suffered no loss. Or if appellants had brought

suit against Bower and the surety on their bond, appellee would have suffered no loss. The facts and circumstances are sufficient to sustain a finding that appellants were guilty of laches, and that it would be inequitable to compel appellee to make good their loss.

Whether a cause of action is barred because of laches is to be determined from the particular facts and circumstances of each case. If a party voluntarily delays asserting a known right, and by reason of such delay, evidence of the matter in controversy has been lost or so obscured that the court is practically precluded from ascertaining the truth of the matter, or if the conditions have so changed as to make the enforcement of the alleged right inequitable, a court of equity, in the interest of justice, will hold that the delay in asserting the right will bar a recovery on the ground of laches. *Ryason* v. *Dunten* (1905), 164 Ind. 85, 73 N. E. 74; *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 81 N. E. 71, 82 N. E. 1064; *Lutyens* v. *Ahlrich* (1923), 308 Ill. 11, 139 N. E. 50; *Comings* v. *Powell* (1923), 97 Vt. 286, 122 Atl. 591; *Roberto* v. *Catino* (1922), 140 Md. 38, 116 Atl. 873. As was said in *Abel* v. *Love* (1924), 81 Ind. App. 328, 344, 143 N. E. 515: "Nothing will call a court of equity into activity except conscience, good faith and reasonable diligence. When these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced."

Having reached the conclusion that the facts are sufficient to bar a recovery because of laches, we are not called upon to either approve or disapprove the two cases cited by appellants. The court having correctly concluded that appellants were not entitled to recover, the judgment is affirmed.